**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

DARRON JEFFRIES,

      Plaintiff,

   v.          Civil Action No. _____

UNITED STATES POSTAL SERVICE,

      Defendant,

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This is an action for interference and retaliation under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 et seq., for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and for deprivation of property without due process of law in violation of the Fifth Amendment to the United States Constitution.

2. Plaintiff Darron Vaughn Jeffries seeks equitable relief related to two distinct but related wrongs: (a) Defendant's order requiring him to report to a worksite approximately 60-90 minutes from his original duty station—and up to three

hours or more in inclement weather—for "training" on duties he has successfully performed for over 18 months; and (b) Defendant's unauthorized removal, seizure, and loss of Plaintiff's irreplaceable personal property—including every significant document attesting to his life's achievements—without providing him any notice, inventory, or opportunity to retrieve his belongings.

3. Plaintiff seeks only equitable relief, including restoration to his original position, return of his property, and reimbursement of his filing fees and postage costs. All claims for monetary damages, including back pay, emotional distress, and other compensatory damages, are expressly reserved for his pending Equal Employment Opportunity Commission (EEOC) proceeding and will not be litigated in this forum.[1]

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 2617(a)(2) (FMLA), 42 U.S.C. § 2000e-5(f)(3) (Title VII), and 28 U.S.C. § 1331 for claims arising under the Fifth Amendment to the United States Constitution.

5. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b) because Plaintiff resides in Union, Maine, and the events giving rise to this claim occurred within this District.

**PARTIES**

6.  Plaintiff Darron Vaughn Jeffries is a resident of Union, Maine, and an employee of the United States Postal Service (EIN 04677512).

7.  Defendant United States Postal Service is a federal executive agency and Plaintiff's employer within the meaning of the FMLA and Title VII. Defendant, through its agents and employees, is also responsible for the seizure and deprivation of Plaintiff's personal property.

**FACTUAL ALLEGATIONS**

**Plaintiff's Employment and the Promise of a Professional Workspace**

8.  Plaintiff is a Supervisor, Customer Services at USPS, based in Rockland, Maine. He has held this position for over 18 months. This is the first time in his professional career that Plaintiff has been assigned his own office—a space that symbolized his achievement, his hard-won credentials, and his place as a professional.

9.  In 2016, when Plaintiff moved to Old Town, Maine, he made a deliberate and meaningful decision. He gathered every document that represented his life's achievements—his educational diplomas, his certificates of faith and civic affiliation, his awards, his research, his professional recognitions—and placed them all in a single box. He labeled that box **"living room degrees"** because it

contained the tangible proof of everything he had worked for, everything he had

accomplished, everything that made him who he is.

10. For years, that box remained in his living room—a repository of his past, waiting

for the future. When Plaintiff was assigned his own office at the Rockland Post

Office, he saw it as the moment he had been waiting for: his first professional

workspace in over ten years, where he could finally display the achievements of a

lifetime. He brought the entire box to his office only after he had finally finished

clearing out all the items that had been left behind by others for months. Every

document that attested to his identity, his education, his faith, his community

involvement, his professional excellence, and his contributions to his field went

into that office.

11. Plaintiff never imagined that anyone would deny him access to his own life's

history. He never imagined that an employer would clear out his office without

notice, without an inventory, without any opportunity for him to retrieve the

irreplaceable evidence of his existence.

**Plaintiff's Leadership and Mentorship**

12. In February or March 2025, Plaintiff took the online Lean Six Sigma Yellow Belt

training course presented by USPS. This training is documented in USPS records.

Plaintiff successfully completed the course and earned his Yellow Belt

certification.

13. Beyond his own achievement, Plaintiff encouraged and mentored two colleagues—one from the Rockland Post Office and one from the Owl's Head, Maine Post Office—to take the online Yellow Belt training course as well. Plaintiff personally urged them to pursue their certifications, to develop their own process improvement projects, and to use their training to advance their careers within the Postal Service. His efforts reflect his dedication to his employer and his desire to contribute positively to the agency's mission.[2]

**Protected Activity**

14. Plaintiff has engaged in protected activity under the FMLA by requesting and taking leave protected by the FMLA.

15. Plaintiff has engaged in protected activity under Title VII by filing complaints with the Equal Employment Opportunity Commission.[3]

**The Return from FMLA Leave and the Promised Investigation**

16. Plaintiff had approved FMLA leave from September 12, 2025 through October 23, 2025. He was medically cleared to return to work.

17. On October 24, 2025, Plaintiff returned to work at the Rockland Post Office. Upon his return, he was denied his identification badge, denied access to his office (which he was told had become a "locked storage room"), and denied the tools and systems necessary to perform his duties.

18. Later that same day—October 24, 2025—Plaintiff was placed on paid administrative leave. The letter informing him of this action stated that he was being placed on leave pending a "full investigation" into an alleged "failure to obey a direct order." The letter also instructed Plaintiff that he was not to enter any postal facility except as a customer in the lobby. [Exhibit 7][4]

19. To date—nearly four months later—no investigation has ever occurred. No findings have been provided. No interview has been conducted. Plaintiff still does not know what "direct order" he allegedly violated.

20. From October 24, 2025 until February 16, 2026, Plaintiff received no written communication from Defendant regarding his employment status, the promised investigation, or any path to return to work. He remained in limbo, unable to work and without any explanation.

21. On February 16, 2026, Plaintiff signed for a certified letter from MPOO Tyler Waters. This was the first written communication Plaintiff had received in nearly four months. That letter scheduled the February 19, 2026 return-to-work meeting. [Exhibit 1]

22. Plaintiff has not worked at the Rockland Post Office since October 24, 2025. The investigation promised upon his return from FMLA leave has never been

completed. He remains out of work under the same status imposed the day he

returned from approved FMLA leave.

23. Because Plaintiff was placed on leave immediately upon returning from FMLA

leave, and because he has remained out of work continuously since that time, his

current claims for restoration to an equivalent position fall squarely within the

protections of the FMLA. The four-month gap is not a break in his FMLA-

protected status—it is the direct result of Defendant's unlawful actions upon his

return.[5]

**The February 19, 2026 Meeting and Retaliatory Training Order**

24. On February 13, 2026, Defendant scheduled a return-to-work meeting for

February 19, 2026. [Exhibit 1]

25. On February 18, 2026, Plaintiff informed Defendant he would attend only in the

lobby due to a prior written directive. [Exhibit 2]

26. Defendant responded by asserting authority to override the prior directive for

purposes of the meeting. [Exhibit 3]

27. At the February 19 meeting, Plaintiff submitted a written statement under

protest, raising concerns about the failure to complete a promised investigation

and his personal property. A copy of that statement is attached as Exhibit 4. The

meeting was recorded by Defendant, and Plaintiff reserves the right to request

that recording in discovery.[6]

28. Defendant dismissed Plaintiff's concerns and stated he would send Plaintiff to

another office for training on duties he already performs.

29. On February 21, 2026, Defendant ordered Plaintiff to report to the Augusta,

Maine Post Office (40 Western Avenue) beginning Monday, February 24, 2026, at

7:00 a.m. for "training and mentoring" on the seven core duties of an SCS-17—

the same duties Plaintiff has performed for 18+ months. [Exhibit 5]

30. Augusta is approximately 60–90 minutes from Plaintiff's original Rockland duty

station under normal driving conditions. In inclement weather, which is common

in Maine during winter months, the commute can extend to three hours or more

each way—a severe and unreasonable burden.

31. Defendant requires documentation of this "training" on PS Form 2432 and

supervision by another manager. [Exhibit 6]

32. No similarly situated employee has been required to undergo such training. No

legitimate business justification exists for this requirement.

33. This order came immediately after Plaintiff raised his protected concerns at the

February 19 meeting.

34. Plaintiff is ready, willing, and able to perform his duties at the Rockland Post Office, where he has worked successfully for over 18 months.[7]

**The Destruction of Plaintiff's Workspace**

35. Even if Plaintiff is restored to his original worksite at Rockland, Maine, he has no office, no identification badge, no access to the systems necessary to perform his duties, and none of the personal work materials he purchased and developed to do his job effectively. His office has been cleared and repurposed as a storage room. His Lean Six Sigma project materials—the very evidence of his initiative and expertise—are gone. His identification badge has been withheld. His computer access has been terminated.

36. Plaintiff cannot perform the duties of a Supervisor, Customer Services without:

   a. An office from which to work to store sensitive information and meet with workers in a confidential setting;

   b. His identification badge to access the facility and clock in;

   c. Computer access to perform supervisory tasks;

   d. His Lean Six Sigma project materials and other work-related documents;

   e. The personal property necessary to function professionally.

37. By destroying Plaintiff's workspace and depriving him of the tools and materials necessary to perform his job, Defendant has rendered any "return to work" at

Rockland, ME is meaningless. This is not restoration to an equivalent position; it is restoration to an empty shell, stripped of everything Plaintiff needs to do his job.

### COUNT I: FMLA INTERFERENCE

### (Failure to Restore to Equivalent Position)

*29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.215*

38. Plaintiff incorporates paragraphs 1 through 37.

39. Plaintiff was an eligible employee under the FMLA, and Defendant was a covered employer.

40. Upon return from FMLA leave, an employee must be restored to the same or an "equivalent position." 29 U.S.C. § 2614(a)(1).

41. An equivalent position must be at "the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance)." 29 C.F.R. § 825.215(e)(1).[8]

42. Defendant's order requiring Plaintiff to report to Augusta—60–90 minutes from his original worksite under normal conditions, and up to three hours or more in inclement weather—constitutes a significant increase in commuting time and distance and a failure to restore Plaintiff to an equivalent position.

43. The training requirement, imposed only after Plaintiff raised protected concerns and never required of similarly situated employees, demonstrates the position is not "virtually identical."

44. Moreover, Defendant has destroyed Plaintiff's ability to perform his duties at his original worksite. His office has been cleared, his personal property—including work materials he purchased with his own funds for his Lean Six Sigma projects— has been taken, his identification badge has been withheld, and he has been denied access to the tools and systems necessary to perform his job. This complete dismantling of his ability to function as a Supervisor constitutes the ultimate interference with his right to be restored to an equivalent position.

45. These actions constitute interference with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a)(1).

### COUNT II: FMLA RETALIATION
### *29 U.S.C. § 2615(a)(1)-(2)*

46. Plaintiff incorporates paragraphs 1 through 45.

47. To establish FMLA retaliation, a plaintiff must show: (1) protected activity; (2) adverse employment action; and (3) causal connection. *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005).

48. Plaintiff engaged in protected activity by taking FMLA leave.

49. The standard for "adverse action" is governed by *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006): an action is adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[9]

50. The Augusta training order—requiring 60–90 minutes daily travel (and up to three hours or more in inclement weather) for training on duties Plaintiff already performs, with documentation and supervision—would dissuade a reasonable employee from engaging in protected activity.

51. A causal connection exists, evidenced by:

   a. Temporal proximity: the training order came immediately after Plaintiff raised protected concerns at the February 19 meeting;

   b. The requirement was unprecedented and, to my knowledge, had never been imposed on similarly situated employees. Even if it had been, it would still constitute a violation.

52. Defendant's actions constitute unlawful retaliation in violation of the FMLA.

## COUNT III: TITLE VII RETALIATION

### *42 U.S.C. § 2000e-3(a); Burlington Northern v. White*

53. Plaintiff incorporates paragraphs 1 through 52.

54. Title VII's anti-retaliation provision forbids employer actions that are "materially adverse," meaning they "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 57.

55. Plaintiff engaged in protected EEO activity by filing complaints with the EEOC. (All substantive discrimination claims are exclusively reserved for that forum.)

56. The Augusta training order is materially adverse and would dissuade a reasonable employee from engaging in protected activity.

57. A causal connection exists, as evidenced by the timing and absence of legitimate justification.

## COUNT IV: DEPRIVATION OF PERSONAL PROPERTY WITHOUT DUE PROCESS OF LAW
### *(Fifth Amendment to the United States Constitution)*

58. Plaintiff incorporates paragraphs 1 through 57 as if fully set forth herein.

59. The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." This prohibition applies to the actions of federal employees acting under color of federal law. The Due Process Clause generally prohibits the federal government from depriving a person of property without first affording notice and an opportunity to be heard. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).[10]

60. In 2016, when Plaintiff moved to Old Town, Maine, he made a deliberate decision to preserve his life's achievements. He gathered every significant document attesting to his identity, his education, his faith, his civic affiliations, his professional recognition, and his contributions—and placed them all in a single box, labeled **"living room/degrees."** This box contained the tangible proof of everything he had worked for.

61. Before July 15, 2025, Plaintiff's office contained all of the following irreplaceable items:

    a. Plaintiff's high school diploma;

    b. Two Bachelor's degree diplomas;

    c. Master's degree diplomas;

    d. Masonic initiation and membership certificates;

    e. Fraternity initiation and membership certificates;

    f. Plaintiff's original birth certificate;

    g. Plaintiff's baptism certificate;

    h. A personally signed letter from President George W. Bush, addressed to Plaintiff—a unique and irreplaceable memento of recognition from the President of the United States;

    i. Awards presented to Plaintiff by the United States Postal Service recognizing his service and contributions;

    j. A Valedictorian Certificate awarded to Plaintiff by the President of the National Rural Letter Carriers' Association (NRLCA) in recognition of achieving the highest rank in his RCA training class;

k. A published handout from the research exposition chaired by Plaintiff during his tenure as President of the Association of Graduate Students at the University of Maine, containing his signed letter thanking participants and a published reference to his own research;

l. Original documents, data, research, analyses, process maps, presentations, and all materials related to Plaintiff's Lean Six Sigma belt projects—projects Plaintiff personally conceived, funded with his own money, and developed over many months to improve United States Postal Service efficiency, reduce operational costs, and enhance workplace productivity. These materials represent not only Plaintiff's individual effort but also his role as a mentor who encouraged colleagues to pursue their own certifications and contribute to the agency's improvement.

62. These items are not merely "personal effects." They are the complete documentary history of Plaintiff's life: his education, his faith, his civic engagement, his national recognition, his academic leadership, his professional excellence, and his good faith efforts to improve his employer. Many are unique, one-of-a-kind documents that cannot be replaced—the President's letter, the original certificates, the published handout, the valedictorian award.[11] The Lean Six Sigma materials represent intellectual property and professional work product that cannot be recreated; the original data, analyses, and process maps embody countless hours of effort and personal expense.

63. Plaintiff was never notified that his office would be cleared. He was never consulted about the disposition of his personal property. He was never given an opportunity to retrieve any of these items—not one. The box labeled "living room

degrees," which held his entire life's achievements, was taken without his knowledge or consent.

64. When Plaintiff later inquired about his office, he was told it was now a "locked storage room." When he asked about his personal items, he was told they were "in a corner." When he was finally able to look, they were not there. To this day, Plaintiff does not know where his property is, who took it, whether it has been destroyed, stolen, or simply lost.

65. This conduct was not authorized by any established procedure, nor did it result from mere negligence. It was an intentional, unauthorized, and arbitrary deprivation of property by federal employees acting under color of federal law. The complete absence of any notice, any hearing, any inventory, or any opportunity to retrieve his belongings constitutes a violation of the most basic requirements of due process.

66. The taking of Plaintiff's entire life's achievements—every document that proved his identity, his education, his faith, his civic affiliations, his professional excellence—without any process shocks the conscience. No one could reasonably anticipate that their employer would clear out their office, discard or destroy every irreplaceable document of personal history, and offer no explanation, no inventory, no opportunity to retrieve what was taken.

67. Because Plaintiff seeks only equitable relief—specifically, a court-ordered inventory, access to retrieve his property, an injunction preventing its destruction, and an accounting of what was taken—and because he has no adequate remedy at law for the loss of irreplaceable sentimental items, this claim is properly before the Court.[12]

68. Defendant's conduct has caused Plaintiff severe emotional distress, anxiety, and a profound sense of personal violation. The loss of these items—the complete documentary record of his life—is an irreparable harm that cannot be remedied by money damages alone. The uncertainty of not knowing what happened to his property compounds this harm daily.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's actions violate the FMLA and Title VII;

B. Order Defendant to immediately restore Plaintiff to an equivalent position at his original worksite in Rockland, Maine, with identical pay, benefits, shift, and working conditions;

C. Order Defendant to immediately provide Plaintiff with a functional office space, his identification badge, full computer and systems access, and all tools necessary to perform the duties of Supervisor, Customer Services;

D. Enjoin Defendant from requiring Plaintiff to report to Augusta, Maine, or any worksite outside his normal commuting area;

E. Order Defendant to immediately provide Plaintiff with a complete written inventory of all personal property removed from his office, identifying what items were removed, when they were removed, by whom, and their current location;

F. Order Defendant to grant Plaintiff immediate access to retrieve any and all personal property in Defendant's custody or control;

G. Order Defendant to preserve all personal property belonging to Plaintiff and to take no action to destroy, transfer, or dispose of such property pending further order of this Court;

H. Enjoin Defendant from removing, disposing of, or destroying any personal property belonging to Plaintiff without providing him notice and an opportunity to be heard;

I. Award Plaintiff his costs, including filing fees and postage costs incurred in this action;

J. Reserve Plaintiff's right to seek monetary damages in a separate proceeding (including but not limited to his pending EEOC complaint); and

K. Grant such other and further equitable relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Darron Vaughn Jeffries**

**Darron Vaughn Jeffries (Pro se)**
PO Box 11
Union, ME 04862
deeveejay@outlook.com

**Date: February 23, 2026**


## EXHIBIT LIST

| Exhibit | Document | **Date** |

| **Exhibit 1** | February 13, 2026 Meeting Notice | **Feb 13, 2026** |

| **Exhibit 2** | February 18, 2026 Email Chain (lobby/safety) | **Feb 18, 2026** |

| **Exhibit 3** | Tyler's February 18 Response | **Feb 18, 2026** |

| **Exhibit 4** | February 19, 2026 Written Statement (submitted under protest) | **Feb 19, 2026** |

| **Exhibit 5** | February 21, 2026 Training Order | **Feb 21, 2026** |

| **Exhibit 6** | PS Form 2432 and Training Requirements | **Feb 21, 2026** |

| **Exhibit 7** | October 24, 2025 Employment Status Letter | **Oct 24, 2025** |

| **Exhibit 8** | Photo of Office Door before July 15, 2025 | ~ March **2025** |

| **Exhibit 9** | Photo of Office Door on October 24, 2025 | **Oct 24, 2025** |

# FOOTNOTES

**Footnotes**

1. Plaintiff's EEOC complaint alleges discrimination based on race, color, sex, and disability, and seeks monetary remedies including compensatory damages. Those claims are not asserted here. This action is limited to equitable relief for FMLA violations and unconstitutional deprivation of property, which are not appealable to the Merit Systems Protection Board and therefore do not create a mixed case. *See* 29 C.F.R. § 1614.302(a) (defining mixed case complaints as those involving actions appealable to the MSPB).

2. Plaintiff's Yellow Belt training in February/March 2025 and his mentorship of colleagues are documented in USPS records. This evidence directly contradicts any suggestion that Plaintiff requires "training" on basic supervisory duties.

3. All allegations of discrimination based on race, color, sex, disability, and related retaliation are exclusively reserved for Plaintiff's pending EEOC proceeding. *See* 29 C.F.R. § 1614.302. Those claims are not asserted in this Complaint, and nothing herein shall be construed as waiving or merging them.

4. A copy of the October 24, 2025 letter is attached as Exhibit 7. The letter promised a "full investigation" and stated Plaintiff would remain on paid leave "until you are advised otherwise." No investigation has ever occurred, and no written modification of his status has ever been provided.

5. The FMLA requires restoration to an equivalent position upon return from leave. 29 U.S.C. § 2614(a)(1). By placing Plaintiff on leave immediately upon his return, and then failing to complete any investigation for nearly four months, Defendant has effectively denied Plaintiff his right to restoration. The ongoing deprivation of his ability to work is a continuing violation of his FMLA rights.

6. Defendant recorded the February 19, 2026 meeting. Plaintiff reserves the right to request that recording in discovery, as it may contain admissions or evidence relevant to his claims.

7. The Supreme Court has held that a reassignment of duties can constitute retaliatory discrimination even where both positions fall within the same job description. *Burlington Northern*, 548 U.S. at 70-71.

8. Courts have recognized that even smaller increases in commuting distance can raise genuine issues of fact as to whether a position is equivalent. *See McFadden v. Seagoville State Bank*, Civ. A. 3:08, 2009 WL 37596, at *2 (N.D. Tex. Jan. 6, 2009) (denying summary judgment where new commute required an additional 18 miles and 20 minutes each

way). Here, Plaintiff faces an increase of 60-90 minutes each way—far exceeding what courts have found potentially actionable.

9. In *Burlington Northern*, the Supreme Court held that a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description. 548 U.S. at 70-71. The Court emphasized that "almost every job category involves some duties that are less desirable than others," and that a jury could reasonably conclude that a reassignment to more arduous duties would be materially adverse. *Id.* at 71.

10. The Fifth Amendment's Due Process Clause requires the government to provide notice and a meaningful opportunity to be heard before depriving a person of property. *See also Loudermill*, 470 U.S. at 542. Here, Plaintiff received no notice and no opportunity to retrieve his property—a complete denial of due process.

11. Courts recognize that certain property has "special and unique value" not measurable in money. *See Medlen v. Strickland*, 353 S.W.3d 576 (Tex. App. 2011) (sentimental value of personal mementos can constitute irreparable harm). Where property has little market value and its main value is sentimental, equitable relief is appropriate because money damages are inadequate.

12. *See Floyd v. U.S. Marshals*, 502 F. App'x 624 (8th Cir. 2012) (unpublished) (reversing dismissal of pro se plaintiff's claim for return of personal property, holding that complaint successfully alleged a claim for equitable relief even where damages were barred). Though unpublished, this case is cited for its persuasive reasoning that courts should liberally construe pro se pleadings seeking return of irreplaceable property.